1  **Geoffrey C. Angel**
   **ANGEL LAW FIRM**
2  **803 West Babcock**
   **Bozeman, Montana 59715**
3  **Telephone (406) 922-2210**
   **Facsimile (406) 922-2211**
4  **christianangel@hotmail.com**

5  **Attorney for Plaintiff**

6

7

                    **IN THE UNITED STATES DISTRICT COURT**
8                      **FOR THE DISTRICT OF MONTANA**
                            **HELENA DIVISION**
9

   **TINA McCOLL,**              )        **Cause Number CV-17-40-H-SEH**
10
       **Plaintiff,**            )        **McCOLL'S BRIEF IN SUPPORT**
11                               )        **OF MOTION TO COMPEL**
   **vs.**                       )        **DISCOVERY**
12                               )
   **ALLIED PROFESSIONALS**      )
13 **INSURANCE COMPANY,**        )
                                 )
14        **Defendant.**         )

15        The Court should compel Allied Professionals Insurance Company (APIC)

16 to produce an unredacted copy of its Claims File Notes and it Claims File.  APIC's

17 in-house counsel, Sara Schroeder, investigated and adjusted the underlying claim

18 then disputed whether liability was reasonably clear.  APIC now asserts a

19 reasonable basis in fact or law defense.  At the same time, APIC refuses to

20 produce most of the content of the Claims Notes based on non-specific claims of

21 confidentiality and privilege.  APIC's Privilege Log is so cursory it is impossible

22 to tell what documents are withheld and the basis for withholding each document.

23 The Claims Notes that were belatedly produced are so heavily redacted with

24 claims of privilege and confidentiality that no reasonable analysis can be had.

25 APIC's redaction of the Claims Notes is unsupported by any good faith attempt to

26 assert legitimate rights of privilege or confidentiality and should result in the

27 imposition of sanctions.  The sanctions should equal, and be in addition to, the

28 burden upon Mrs. McColl and her counsel to obtain this discoverable evidence.

1      The Court should also order the deposition of Sara Schroeder reopened at

2  APIC and/or its counsel Michael Kadish's expense in terms of costs and fees.

3      Armed with the over-redacted Claims Notes, Ms. Schroeder worked in

4  concert with *pro hac vice* counsel Mr. Kadish to block the effective exchange of

5  information and any meaningful discovery during her deposition.  Mr. Kadish

6  interfered with the deposition at every turn.

## Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Parties and Nature of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Legal Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   1. Rule 26 permits discovery of all non-privileged materials and requires a

       privilege to be asserted timely and with specificity . . . . . . . . . . . . . 9

   2. APIC refuses to permit discovery of ANC's claims handling . . . . . . . . 9

   3. APIC failed to timely and adequate assert a privilege . . . . . . . . . . . . . 11

   4. APIC, Ms. Schroeder and Mr. Kadish improperly prevented discovery

     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## Index of Exhibits

Privilege Log  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit A

Claims Notes (Redacted)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit B

Deposition of Sara Schroeder, Esq.  . . . . . . . . . . . . . . . . . . . . . . . . Exhibit C

(Video Deposition to be Filed Conventionally)

Claims Notes (Partially Unredacted)  . . . . . . . . . . . . . . . . . . . . . . . Exhibit D

1

## <u>Table of Authorities</u>

2

### <u>Table of Cases</u>

3

Barnard Pipeline, Inc. v. Travelers, CV-13-007-M-DLC (D. Mont. April 17, 2014)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4

Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct., 408 F.3d 1142
(9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

5

Chambers v. Nasco, Inc., 501 U.S. 32 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6

Hickman v. Taylor, 329 U.S. 49 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7

HSS Enterprise, LLC v. Amco Ins. Co., 2008 WL 163669 (W.D.Wash. January 14,
2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8

Linde Thomson v. Resolution Trust Corp., 5 F.3d 1508 (D.C. Cir. 1993) . . . . . 10

9

Maloney v. Home and Investment Center, Inc., 2000 MT 34, 298 Mont. 213, 994
P.2d 1124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

10

Massaro v. Dunham, 184 Mont. 400 P.2d 249 (1979) . . . . . . . . . . . . . . . . . . . . 7

11

Owen v. F.A. Buttrey Co., 192 Mont. 274, 627 P.2d 1233 (1981) . . . . . . . . . . . 8

12

Richardson, 2006 MT 43, 331 Mont. 231, 130 P.3d 634 . . . . . . . . . . . . . . . . . . 7

13

Smith v. Butte-Silver Bow County, 276 Mont. 329, 916 P.2d 91 (1996) . . . . . . . 8

14

United States v. Procter & Gamble, Co., 356 U.S. 677 (1958) . . . . . . . . . . . . . . 7

15

XU v. McLaughlin Research Institute, 2005 MT 209, 328 Mont. 232, 119 P.3d
100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16

17

18

19

### <u>Table of Statutes</u>

20

Rule 26, Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . passim

21

Rule 34, Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22

23

24

25

26

27

28

## Parties and Nature of Action

1

2     This is a third-party insurance bad faith case.  It follows Tina McColl's

3  claims against Dr. Michael Lang, a Bozeman based Naturopathic Physician, who

4  burned a dime sized four millimeter deep hole in her nose by using an escharotic

5  "black salve" which the Food and Drug Administration banned for sale and use on

6  humans.  APIC insured Dr. Lang as an additional insured on a policy covering the

7  American Naturopathic Council.  APIC is owned by a group of insureds including

8  Allied Professionals Insurance Services Company (APIS).  APIS is the registered

9  owner of the trademark American Naturopathic Council, a shareholder of APIC

10  and the employer of Ms. Schroeder[1].

11     Dr. Michael Lang testified in the underlying action he was not educated,

12  trained or experienced in the use of black salve.  He had never used it before.

13  He had never used any escharotic on the face.  He thought black salve would only

14  harm bad cells and would leave good cells unharmed.  He wasn't aware of the

15  risks, benefits or alternatives of black salve so he couldn't obtain Mrs. McColl's

16  voluntary informed consent.  He said he didn't mean to burn a hole in her face.

17     Mrs. McColl notified Dr. Lang and subsequently APIC of her claim of

18  professional negligence and his failure to obtain her informed consent.  APIC

19  acknowledged Mrs. McColl's claim and assigned its Associate General Counsel,

20  Sara Schroeder, to investigate and adjust the claim.  Mrs. McColl requested *Ridley*

21  advance payments which Ms. Schroeder refused.  Attorney Schroeder was not

22  licensed to adjust claims in Montana nor exempt by the Commissioner of

23  Insurance.  Attorney Schroeder was required by *Ridley* to determine whether

24  liability was reasonably clear.  Based on Ms. Schroeder's work APIC denied

25  liability, offered $4,000, and forced Mrs. McColl into litigation by refusing to

26

27     [1] It was discovered at Ms. Schroeder's deposition the named defendant APIC did not employ
Ms. Schroeder but ANC did.  ANC was dismissed from the case, and the default against it set aside,
28  based on APIC's representation that it alone insured and adjusted the claim.  That issue will be
addressed by Mrs. McColl's Motion to Reinstate Default Judgment

investigate, make advance payments and negotiate in good faith.

After three years of litigation a jury returned a verdict in Mrs. McColl's favor for $145,347.  However, Mrs. McColl incurred $14,396 in costs that could not be recovered in the underlying litigation.  After entry of final Judgment Mrs. McColl filed this case against ANC and APIC alleging bad faith.

When the matter was in state court and again after removal, Mrs. McColl served discovery seeking, among other evidence, the complete Claims File. APIC responded by producing ANC's Claims File with everything redacted except those documents in McColl's own file.  A few days later APIC produced more documents and responses that referenced a Privilege Log but no log was produced. APIC still had not produced any documents that were not already in McColl's possession.  After consultation, APIC produced by email the Claims File Notes and a Privilege Log.  The entire Privilege Log states:

> 1.  APIC attorney notes of confidential communications between defense counsel and APIC in connection with the underlying claim;
> 2. Confidential written communications between APIC and defense counsel in connection with the underlying claim;
> 3.  APIC attorney notes of confidential **communications between APIC and its insured** in connection with the underlying claim;
> 4.  Confidential written **communications between APIC and its insured** in connection with the underlying claim;
> 5.  **Confidential memos prepared by APIC attorneys** in connection with the underlying claim; and
> 6.  Billing invoices and payment information from defense counsel and experts/consultants in connection with the underlying claim.

*Defendant's Privilege Log, Exhibit A (emphasis added).*  The Privilege Log does not identify any particular documents, assert any particular privilege or identify the author, recipient or other information about the documents withheld.  It is impossible to tell what privilege applies or what documents are withheld.

The Claims Notes are ANC's contemporaneous record of the investigation into Mrs. McColl's claims.  APIC withheld nearly all of the investigation including the reserves information.  The reserves are evidence of APIC's evaluation of liability and damages.  APIC also withheld Ms. Schroeder's

1  interviews with the insured including what he told them about liability and
2  damages.  APIC's defense is that it had a reasonable basis in fact or law for
3  denying liability for Mrs. McColl's damages.  At the same time it conceals the
4  timing and extent of Ms. Schroeder's investigation which includes what it learned
5  from the insured.

6       Armed with the dearth of disclosures, Ms. Schroder appeared for her
7  deposition in Orange, California.  Local counsel attended the deposition by
8  telephone.  Ms. Schroeder, *pro hac* counsel Mr. Kadish attended in-person along
9  with Michael Schroder, Vice President for ANC and Ms. Schroeder's father.

10       Working together Ms. Schroeder professed a lack of knowledge regarding
11  claims handling, reasonably clear liability or what decisions were made during the
12  handling of the claim.  She could not remember any substantive information and
13  could not refer to the Claims Notes because they were almost entirely redacted.
14  Mr. Kadish objected to nearly ever claims handling question with an objection that
15  the question called for a legal opinion.  Often his objections were speaking
16  objections and he sometimes spoke directly to his client during his objections.

17       The Court should compel production of the complete Claims File including
18  an unredacted copy of the Claims File Notes.  APIC failed to timely and properly
19  assert the privilege and much of the evidence is unprivileged under any scenario.
20  Any privilege would belong to ANC not APIC.  The Court should also award the
21  costs of this motion, including an equal amount as sanctions, under the Court's
22  inherent power to control discovery before it.

23  <u>**Legal Analysis**</u>

24      <u>**Standard of Review**</u>

25       The Rules of Civil Procedure provide that the scope of discovery includes
26  "any non-privileged matter that is relevant to any party's claim or defense." *Rule*
27  *26(b)(1), F.R.Civ.P.*  "'The purpose of discovery is to promote the ascertainment
28  of the truth and the ultimate disposition of the lawsuit in accordance therewith.

Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation.' *Massaro v. Dunham (1979), 184 Mont. 400, 405, 603 P.2d 249, 252 (citing Hickman v. Taylor (1947), 329 U.S. 49, 507, 67 S.Ct. 385, 392, L.Ed. 451)*.  Modern instruments of discovery, together with pre-trial procedures, "'make a trial less a game of blindmans' buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble, Co. (1958), 356 U.S. 677, 682, 78 S.Ct. 983, 986-87, 2 L.Ed.2d 1077 (citing Hickman, 329 U.S. at 501, 67 S.Ct. At 388-89)." Richardson v. State, 2006 MT 43, ¶ 22, 331 Mont. 231, 130 P.3d 634*.  The Courts "must remain intent upon punishing transgressors rather than patiently encouraging their cooperation." *Id at ¶ 56.* "Accordingly, the imposition of **sanctions for failure to comply with discovery procedures is regarded with favor**." *Id.*

The power of a district court to enforce the rules of discovery and to sanction discovery abuses is found in Rule 37, Rule 11 and in the Court's inherent power to manage proceedings before it. *Chambers v. Nasco, Inc., 501 U.S. 32 (1991)*.  "[C]ourts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them.  In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees." *Chambers, 510 U.S. at 33.* There is nothing in Rule 37, Rule 26 or Rule 11 or other rules authorizing sanctions that limit a district court's inherent power to impose sanctions in "its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task." *Id.*  The Court should sanction APIC's dilatory tactics.

Dilatory tactics in the discovery process are by themselves prejudicial to the timely and fair administration of justice. *Maloney v. Home and Investment Center, Inc., 2000 MT 34, 298 Mont. 213, 994 P.2d 1124.* "In adopting a position that

1  dilatory discovery actions are no longer to be dealt with leniently, we are in accord
2  with the recent trend of cases intent upon punishing transgressors rather than
3  patiently trying to encourage their cooperation." *Owen v. F.A. Buttrey Co., 192*
4  *Mont. 274, 280, 627 P.2d 1233, 1236 (1981).* Beginning in 1981 the Supreme
5  Court has repeatedly stated that "dilatory abuse of discovery must no longer be
6  dealt with leniently and the transgressor of discovery abuses should be punished
7  rather than encouraged repeatedly to cooperate." *Maloney at ¶ 34 citing Smith v.*
8  *Butte-Silver Bow County, 276 Mont. 329, 332, 916 P.2d 91, 92-93.* "When
9  litigants use willful delay" "as part and parcel of their trial strategy, they must
10 suffer the consequences." *Owen, 192 Mont. at 280, 627 P.2d at 1236.*.

11      "'Dilatory' simply means tardy; characterized by procrastination; or tending
12 or intended to cause delay." *XU v. McLaughlin Research Institute, 2005 MT 209,*
13 *24, 328 Mont. 232, 119 P.3d 100 citing Merriam-Webster Online Dictionary.* "It
14 therefore does not necessarily require an element of intent." *Id.* In *Xu* the
15 plaintiff's actions "essentially halted discovery" but in this case APIC's actions
16 caused discovery to proceed without relevant evidence and to place witness
17 testimony in question. In *Owen, supra,* the Supreme Court adopted the position
18 that dilatory discovery tactics, whether intentional or not, **must not be dealt with**
19 **leniently** not just to punish the wrongdoer but equally so to deter "other parties to
20 other lawsuits" and to protect "discovery orders of other courts." *Owen, 192*
21 *Mont. at 279, 627 P.2d at 1236.* Furthermore, "the price for dishonesty must be
22 made unbearable to thwart the inevitable temptation that zealous advocacy
23 inspires" to deter similar future conduct and warn others the rules will of
24 discovery will be enforced. *Richardson at ¶ 57.* Together the sanctions requested
25 by Mrs. McColl would lay the heavy burden of the discovery abuses, in both terms
26 of dollars and time, on APIC and/or Mr. Kadish who created the burden. Together
27 they cheated the Court and Mrs. McColl out of the fair administration of this case
28 and they should suffer the consequences in a redoubled effort following

*Richardson* to warn litigants that discovery abuses will not go unchecked.

As will be discussed APIC's improper redaction of the documents together with Ms. Schroeder's deposition conduct impaired discovery, delayed these proceedings and will require compounded discovery at Mrs. McColl's expense.

### 1.  Rule 26 permits discovery of all non-privileged materials and requires a privilege to be asserted timely and with specificity

The Rules governing discovery are clear.  Rule 26 permits discovery of any non-privileged matter that is relevant to the action.  Rule 26 permits withholding relevant information if a privilege is claimed *timely* and with *specificity*.  If a document is withheld is must be identified on a Privilege Log with enough detail to determine whether the privilege applies.  A privilege asserted untimely or inadequately constitutes a waiver.  Despite the Rules the insurer APIC withheld much of ANC's Claims File and produced the Claims Notes that are so heavily redacted they are useless.  APIC also produced an untimely and inadequate Privilege Log from which no meaningful privilege can be claimed.

APIC asserted the attorney-client and work product privileges to redact the insurer's interview of the insured, the insurer's claims notes, the setting and adjustment to reserves and the insurer's receipt of information from defense counsel for the insured.  None of these matters are privileged and any privilege would belong to ANC not APIC.  Any privilege is waived.

### 2.  APIC refuses to permit discovery of ANC's claims handling

The central issues for resolution in this bad faith case are whether ANC timely and fully investigated Mrs. McColl's claim, whether liability was reasonably clear creating a *Ridley* duty to advance pay medical expenses, and whether, based on the information known or available to it, ANC attempted in good faith to effect a prompt, fair and equitable settlement of Mrs. McColl's claim due to her facial disfigurement at the hands of the insured Dr. Lang.

In defense of these claims APIC withheld the entire investigation, including

what Dr. Lang told its claims handler Sara Schroeder and her claims handling

notes based on that information[2].  But these facts are not privileged.

"If what is sought is not legal advice, but insurance, no privilege can or should

exist."  *Linde Thomson v. Resolution Trust Corp., 5 F.3d 1508, 1515 (D.C. Cir.*

*1993).*

APIC inexplicably refused to produce its Claims File including its Claims

Notes.  APIC also failed to provide a contemporaneous Privilege Log as required

by the Federal Rules of Civil Procedure.  APIC's production of the Claims Notes

was not within the 30 days required by Rule 34, F.R.Civ.P. or any extension.

Due to the absence of a timely and meaningful Privilege Log and the untimely

production of the Claims Notes any claims of privilege has been waived.

APIC must produce an unredacted copy of its Claims Notes.  No privilege

applies between an attorney who adjusts a claim and the insured.  There is no

attorney-client relationship.  The Claims Notes are prepared in the ordinary course

of business for claims handling not the giving of advice.  APIC's blanket assertion

covering the entirety of all communications between the insurer and the insured

demonstrates bad faith contempt toward the requirements of the discovery rules.

For example, APIC redacted the entire initial interview between the insurer

and the insured when investigating whether negligence caused the third-degree

chemical burns to Mrs. McColl's face.  APIC redacted the entirety of every

communication with its insured thereafter.

We know ANC denied that liability was reasonably clear but this

determination may be impeached if it set reserves greater than zero.  This is

especially true if, as litigation proceeded, the reserves were repeatedly increased.

Similarly, without any explanation, APIC redacted all communications with

---

[2]On the eve of filing this motion APIC produced a partially unredacted copy of the Claim
Notes (Exhibit D) but they were not available for Ms. Schroeder's deposition and do not alter the
facts or legal arguments relied upon for this motion.

the attorneys hired to defend the insured.  Because APIC had a continuing duty to investigate and attempt in good faith to resolve the dispute, what it learned from the insured's counsel is directly at issue.

Under the Federal Rules, a party withholding documents or information under a claim of privilege must "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protect, will enable the parties to assess the claim." *Rule 26(b)(5)(A)(i-ii), F.R.Civ.P.*  A failure to assert the privilege properly may "waive or otherwise abandon the privilege. *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct., 408 F.3d 1142, 1147 (9th Cir. 2005) citing Rule 26(b)(5) advisory committee's note (1993 Amendments).*

Here Mrs. McColl served her first requests for production by mail on August 28, 2017.  APIC's answers were due no later than October 2, 2017 which was extended by agreement to October 12, 2017.  APIC timely responded but the documents produced did not include anything in the Claims File not already in Mrs. McColl's possession.  APIC did not produce the Claims Notes, did not produce a Privilege Log or identify them anywhere in discovery.  Ms. Schroeder's deposition was imminent.  After consultation APIC belatedly produced a Privilege Log attached hereto as Exhibit A and set forth in its entirety above.  APIC also produced a heavily redacted copy of its Claims Notes attached as Exhibit B.

The Privilege Log does not identify the Claims Notes are assert any particular privilege by name leaving the Court and Mrs. McColl to guess what has been redacted/withheld and why.  Any claims of privilege have been waived.

### 3. APIC failed to timely and adequate assert a privilege

Whether the failure to *timely* and *adequately* produce a Privilege Log will be deemed a waiver depends on a "holistic reasonable analysis" that considers:

> [T]he degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars

1
2
3

typically contained in a privilege log is presumptive sufficient and boilerplate objectives are presumptively insufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

4    *Burlington 408 F.3d at 1149.*  Applying these factors, APIC waived any privilege

5    within the redacted documents (if there were any such privilege to begin with) by

6    not *timely* providing a Privilege Log identifying the author, the recipient, the

7    nature of the document and grounds for the redactions or the extent to which

8    documents were withheld.  APIC's failure to provide a Privilege Log is not

9    excusable.  The Privilege Log was not provided with the initial disclosure of

10   documents or with the supplement but only upon demand by McColl's counsel.

11   The Privilege Log belatedly produced is entirely insufficient to satisfy the

12   requirements of the Rules.

13         The Federal Rules expressly require parties to identify and produce in

14   discovery all non-privileged information that is either relevant or reasonably

15   calculated to lead to the discovery of admissible evidence.  *Rule 26(b)(1),*

16   *F.R.Civ.P.*  However, as discussed above, its is apparent from APIC's untimely

17   productions of redacted documents and an inadequate privilege log that it has no

18   intention of following the rules.  This was not the product of a mistake in timing

19   nor a misunderstanding of the requirements of the Rules.  APIC was unjustified in

20   the blanket redaction and untimely and unjustified assertion of privilege.

21         More egregious, APIC sought to parlay the late incomplete production at

22   Ms. Schroeder's deposition in California by having her unprepared to discuss her

23   claims handling and unable to refresh her recollection by reference to her records.

24   **4.  APIC, Ms. Schroeder and Mr. Kadish improperly prevented discovery**

25
26         When asked if liability would be reasonably clear if the doctor accidentally

27   burned a hole in the patient's nose Mr. Kadish objected.  "Objection; calls for a

28   legal conclusion.  What do you mean by 'reasonably clear'?"  *Deposition of Sara*

1   *Schroeder, p. 6, ln 14-20; Video 1:26-1:46; Exhibit C.*  Ms. Schroeder, a Harvard

2   Law School graduate, California licensed attorney and licensed insurance broker

3   then responded she didn't understand the question.  She was asked what she

4   understood the phrase "reasonably clear liability" means.  Mr. Kadish objected to

5   relevance.  *Deposition, p. 6-7, ln 24-3; Video 1:56-2:04.*  Yet this is a bad faith

6   claim because the insurer disputed whether liability was reasonably clear based on

7   Ms. Schroeder's activities investigating and adjusting the claim.  Ms. Schroeder

8   needed the question repeated.  Mr. Kadish then objected the question calls for a

9   legal conclusion.  *Deposition, p. 7, ln 6–12.*  Ms. Schroeder responded "I don't

10  think I know."  When asked if she knows if liability is reasonably clear if the

11  doctor burned a hole in the patient's nose, Mr. Kadish asked to have the question

12  repeated.  It was read back.  Mr. Kadish then objected that the question was

13  compound.  The question was:

14      Do you know if liability is reasonably clear if Dr. Michael Lang
        accidentally burned a hole in Tina McColl's face?

15
16  *Transcript, p. 8, ln 2-11; Video 3:23-3:33.*  Ms. Schroeder then asked to have the

17  question rephrased because she didn't understand what was being asked.  The

18  questioning was redirected and she was asked if she had an understanding of

19  "reasonable clear liability" as it is applied in Montana insurance law.  Mr. Kadish

20  objected that the question calls for speculation.  *Deposition, pp. 8-9, ln 24-3.*

21  Ms. Schroeder responded "I'm not sure that I do."  *Deposition, p. 9, ln 5.*

22      When asked if her or her father Michael Schroeder, the Vice President of

23  Claims and the other person involved in adjusting Mrs. McColl's claim, was the

24  primary adjuster on the claim Mr. Kadish objected without stating a basis for

25  objection.  *Deposition, p. 9, ln 16.*  When presented with the Claims Notes and

26  asked to "describe for the jury what document that is?"  Mr. Kadish, prompted by

27  the deponent, objected that the document speaks for itself "if you know what this

28  is you can go ahead and answer."  *Video 7:53-7:57; Deposition, p. 11, ln 9-15.*

When asked who made the decision regarding coverage for Mrs. McColl's claim against Dr. Lang, Ms. Schroeder responded that Michael Schroeder, her father, did.  When asked who made the decision regarding liability for Mrs. McColl's claim against Dr. Lang, Mr. Kadish objected that the question calls for speculation, vague and ambiguous "what do you mean as to decision as to liability, it is up to a jury to decide that?"  *Deposition, p. 15, ln 5-10; Video 12:04-12:26.* At this point in the deposition, 12 minutes in, a record was made of the apparent attempts to thwart the deposition through inapplicable and abusive objections. The question was read back:

> Who made the decision about the liability for Tina McColl's claim against Dr. Michael Lang?

Ms. Schroeder responded "I don't understand the question."  *Deposition, p. 16, ln 1-5; Video 13:13-13:23.*  Defense counsel and the deponent then took a break and upon their return made a record that the objections would continue.

> Q:  Who made the decision regarding Dr. Lang's liability for Tina McColl's claim?
> A: I don't' understand your question.

*Deposition, p. 17, ln 8-10; Video 15:04-15:13.*  When asked what decisions she understands were made regarding Tina McColl's claim against Dr. Lang, Mr. Kadish objected to the form of the question, overbroad and vague.  Ms. Schroeder said she doesn't know.  *Deposition, p. 17, ln 11-15.*

Do you know whether there was a decision made regarding liability? *Deposition pp. 17-18, ln 22-3 Video 15:42-15.*  To which Mr. Kadish objected to the form of the question, calls for a legal conclusion, vague and ambiguous.  Ms. Schroeder responded "I don't understand what your asking."  *Id.*  "Tell me a little bit about what do you do for a living."  Mr. Kadish "Objection, calls for a narrative, do you have a more specific question?"  *Deposition, p. 18, ln 5-8; Video 15:55-16:04.*  Ms. Schroeder responded "I'm an attorney."  "Do you know who made the claim decision regarding liability."  "Objection.  Calls for speculation."

*Deposition, p. 19, ln 4-8.* "I don't know what you mean by claim decision regarding liability." *Id; Video16:50-17:04.* "Did you make a decision regarding liability for Tina McCall's claim against Dr. Michael Lang?" *Deposition p. 23, ln 2-8.* "Objection calls for a legal conclusion." "I don't know what you mean by decision regarding liability." *Id; Video 21:07-21:26.* At this point in the deposition another record was made of the obstructive objections. Undeterred the following occurred:

> Q: What's your understanding of the *Ridley* obligation in Montana?
> Mr. Kadish: Objection, she's here as a factual witness and not as an expert witness on the law. I'm going to object as calls for a legal conclusion.
> Q: You can answer.
> Mr. Kadish: No, actually to the extent the objection is made it calls for a legal conclusion I'm going to instruct her not to answer as it calls, you're here today as a factual percipient witness.

*Deposition, p. 23, ln 9-19; Video 21:30-*22:10. Mr. Kadish's objection speaks directly to the witness and no answer was given. This was not a mistake as Ms. Schroeder's role was made clear in the very next question and answer.

> Q:  When you adjusted Tina McColl's claim, is that true you adjusted her claim?
> A: I worked on the claim and I did interviews and um but I was working in the capacity as an attorney.

*Deposition, p. 23, ln 21-25; Video 22:20-22:40.*

"[T]o the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply. *Barnard Pipeline, Inc. v. Travelers, citing HSS Enterprise, LLC v. Amco Ins. Co., 2008 WL 163669, *3 (W.D.Wash. January 14, 2008).*

The objections set forth above were representative of the entire deposition which abruptly ended when it was clear Ms. Schroeder could not discuss her claims handling without her Claims Notes. A record was made of McColl's intent to ask the Court to reopen the deposition at defendant's expense.

**Conclusion**

To the extent APIC is participating in discovery its responses are both slow in coming and unrevealing in content.  APIC claims it is exercising its right to withhold discovery of the very evidence at issue.  The Claims File, including complete Claims Notes, and reserve information are directly at issue in this insurance bad faith case.  APIC reasonably knew its withholding of discovery would thwart McColl's efforts to conduct timely and meaningful depositions. By withholding the Claims Notes, APIC can assert a reasonable basis defense while preventing Mrs. McColl from testing or challenging the facts relied upon. Full and timely disclosure of the Claims Notes would achieve the goals to reach a just, speedy and inexpensive resolution.  Mrs. McColl would not have incurred the costs of this motion or the expense of reopening the deposition of Sara Schroeder had APIC conformed its conduct to the discovery rules.

For these reasons Tina McColl respectfully requests the Court order APIC to produce an unredacted copy of the Claims File along with an unredacted copy of the Claims Notes.  The Court should order the deposition of Sara Schroeder to be reopened at APIC and/or Mr. Kadish's expense.  The Court should impose a reasonable sanction in addition to thwart similar discovery abuses.


DATED this 15th day of November 2017


_____
/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff

**Certificate of Compliance**

I hereby certify this brief complies with the word length limits of Local Rule 7.1(d)(2), United States District Court for the District of Montana, and contains (less than 3,250) 4,482 words according to the word count of WordPerfect 12 excluding caption and certificates of service and compliance.

/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff

**Certificate of Service**

I hereby certify that on this 15th day of November 2017 I caused a true and correct copy of the foregoing document to be served upon the opposing party or counsel by electronic filing and via United States Mail, First Class mail, postage prepaid and addressed as follows:

Robert L. Sterup
Brett C. Johnson
Brown Law Firm, P.C.
315 North 24th Street
Billings, Montana 59103-0849

ANGEL LAW FIRM

/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff