IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

|  |  |
|---|---|
| TINA MCCOLL,<br><br>                Plaintiff,<br><br>vs.<br><br>AMERICAN NATUROPATHIC COUNCIL and ALLIED PROFESSIONALS INSURANCE COMPANY,<br><br>                Defendants. | CV 17-40-H-SEH-TJC<br><br>**ORDER DENYING PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY** |

Plaintiff Tina McColl ("McColl") brings this action against Defendant Allied Professional Insurance Company ("Allied") for bad faith insurance practices under Montana's Unfair Trade Practices Act. (Doc. 6.)

United States District Judge Sam E. Haddon has referred the case to the undersigned under 28 U.S.C. § 636(b)(1)(B). (Doc. 76, 82.) Presently before the Court is McColl's Second Motion to Compel Discovery. (Doc. 122.) Having considered the parties' submissions, the Court finds McColl's motion should be denied.

**I.    FACTUAL BACKGROUND**

Allied insured Dr. Michael Lang, a Bozeman naturopathic physician, under a professional liability policy. McColl presented a claim for damages against Dr.

1

Lang for professional negligence, alleging that he applied "black salve" to her nose, which burned a third-degree, 4 mm deep hole in her nose. The claim was not resolved, and ultimately the matter proceeded to trial. A jury rendered a verdict against Dr. Lang in the amount of $138,853.00. (Doc. 36.)

This lawsuit arises out of Allied's handling of McColl's claim against Dr. Lang. (Doc. 6.) McColl alleges Allied failed to timely and adequately investigate, negotiate and pay McColl's damages, despite the fact liability was reasonably clear.

Allied Professionals Insurance Services ("APIS") is a management services company which provides administrative, management and claims handling functions for Allied. The services are provided under a Corporate Services Agreement between Allied and APIS. Pursuant to that agreement, an employee of APIS, Sara Schroeder, participated in the handling of McColl's underlying claim against Dr. Lang. *Id.* Her father, Michael J. Schroeder, also participated in the handling of McColl's underlying claim. Mr. Schroeder is Vice President and legal counsel for APIS, and is also a stockholder in APIS. Although it was involved in the adjustment of McColl's claim, APIS is not a party to this action.

In her present motion, McColl seeks to compel (1) the production of the Corporate Services Agreement between Allied and APIS; (2) a response to "interrogatories about Michael Schroeder's remuneration for his claims handling

2

activities;" and (3) "Michael Schroeder to answer questions about his ownership interest in APIS." (Doc. 123 at 1.)

## II. DISCUSSION

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The relevance standard is commonly recognized as one that is necessarily broad in scope. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b). *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

McColl maintains that an adjuster's financial motivation to deny claims or adjust claims in a particular manner is relevant and discoverable. McColl argues the information sought to be compelled by her motion is necessary to determine whether Michael Schroeder or APIS had a financial motive to refuse to timely investigate and pay her claim against Dr. Lang.

McColl is correct that courts have found that adjuster compensation may be relevant to bad faith claims in certain circumstances. In *Anspach v. United of Omaha Life Ins. Co.,* 2011 WL 3862267 at *9 (D.S.D. Aug. 31, 2011), for example, the federal district court compelled the production of adjuster personnel files, finding they "may reveal whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claim's handling." Here, however, there is no indication that is the case. In fact, Allied has responded to discovery on this issue, and has stated that neither Sara nor Michael Schroeder receive any financial benefit from the manner in which either may handle or adjust individual claims, including McColl's claim. Nevertheless, the Court will discuss below each of the specific matters McColl seeks to compel.

/ / /

/ / /

### A. Corporate Services Agreement

McColl contends that it should be provided with a copy of the Corporate Services Agreement between APIC and APIS "to determine the extent to which Mr. Schroeder is influenced in his claims handling decisions by financial gain." (Doc. 123 at 5.) Allied objects to production of the agreement on the grounds of relevance, and because it is a confidential and proprietary agreement between Allied and APIS. Allied represents that the agreement does not provide for compensation to be paid based on the handling and outcome of any claim or claims. (*Id.*)

The Court ordered Allied to submit a copy of the Corporate Services Agreement for an *in camera* inspection. Allied did so, and the Court has had the opportunity to review the agreement. As represented by Allied, the agreement provides for a flat monthly fee to be paid by Allied to APIS for claims management as well as for other managerial services. It does not provide any variation in compensation to be paid to APIS based upon how APIS, or any of its employees, handles individual claims. Unlike the concern expressed in *Anspach*, the agreement does not provide any financial reward for denying a claim or achieving a particular outcome with regard to claim handling.

Therefore, the Corporate Services Agreement does not evidence a financial incentive to deny McColl's claim, or to refuse to timely investigate and attempt to

settle her claim. McColl has not provided any other basis why the agreement may be relevant to her claims. Therefore, McColl's motion to compel production of the Corporate Services Agreement is denied.

**B. Michael Schroeder's Remuneration for Claims Handling**

McColl seeks an order compelling Allied to answer interrogatories "about Michael Schroeder's remuneration for his claims handling activities," citing Allied's response to McColl's Interrogatory No. 20. (Doc. 123 at 1.) In Interrogatory No. 20, McColl seeks information about whether "Michael Schroeder was offered or received a bonus, profit sharing or other compensation beyond his regular salary" for the years 2012 through 2015. (*Id.* at 4.) Again, McColl contends this information may be relevant to whether Mr. Schroeder had a financial incentive to deny payment of her claim.

But Allied did respond to Interrogatory No. 20. After objecting to the interrogatory on the grounds of relevance and confidentiality, Allied responded in part that "Michael Schroeder was not offered and did not receive a bonus, profit sharing or other compensation beyond his regular salary for the years 2012-2015 that in any way related to any claim including Ms. McColl's." (Doc. 123 at 4.) In a supplemental response to Interrogatory No. 20 provided after the depositions of Sara and Michael Schroeder, Allied reiterated that "[t]he testimony of Sara and Michael Schroeder confirm once again that bonuses are not based upon how claims

including that of Mrs. McColl are handled . . . the calculation of bonuses is not tied to the handling of any particular claim including that of Mrs. McColl." (*Id.*) Consequently, Allied has responded to McColl's discovery request relative to "Michael Schroeder's remuneration for his claims handling activities," (*id.* at 1) and has explained that he does not receive any compensation based upon how individual claims are handled.

Nevertheless, McColl points out that Michael Schroeder has acknowledged that he may be paid a bonus based on "how well [APIS] had done." (Doc. 127-4 at 2.) McColl therefore contends she should be provided the Corporate Services Agreement between Allied and APIS to determine whether Mr. Schroeder's claim handling decisions may be influenced by his desire to benefit APIS. (Doc. 123 at 5.) But again, the Court has reviewed the Allied/APIS Corporate Services Agreement, and it does not provide any claim-based financial incentive, other than setting a flat fee for providing claim management services.

Consequently, Allied has responded to McColl's discovery requests regarding any bonuses and compensation paid to Michael Schroeder for his claims handling activities. McColl has not specified what additional information she seeks to compel on this issue, or why any additional information would be relevant to any of her claims. Therefore, McColl's motion to "compel [Allied] to respond

to interrogatories about Michael Schroeder's remuneration for his claims handling activities" (Doc. 123 at 1) is denied.

### C. Michael Schroeder's Ownership Interest in APIS

McColl also complains that Michael Schroeder improperly refused to answer inquiries in his deposition regarding his ownership interest in APIS. She again claims this information may be relevant to his financial incentive for refusing to investigate and settle her claim. But McColl does not specify where Mr. Schroeder failed to provide information regarding his financial interest in APIS. On the contrary, Mr. Schroeder testified in his deposition that he is an owner of stock in APIS. (Doc. 127-4 at 3, 4.)

The question McColl cites in support of her motion to compel is much broader than Mr. Schroeder's ownership interest in APIS. McColl states that Mr. Schroeder was asked in his deposition "[w]ho are the owners of stock in APIS." (Doc. 123 at 3.) After consulting with counsel, Mr. Schroeder declined to identify the names of other shareholders in APIS on the grounds of relevance. Nevertheless, McColl provides no explanation why the identity of other shareholders in APIS – who did not participate in any way in the adjustment of her claim – would be relevant to the issue of financial incentive. McColl's counsel stated during Mr. Schroeder's deposition that the basis for the inquiry was to determine who had the authority to make discretionary decisions regarding

8

bonuses. (Doc. 127-4 at 3.) But it was made clear in the deposition that Mr. Schroeder was prepared to answer any questions McColl had concerning who had the authority within APIS to authorize bonuses. (*See id.,* stating "I will happily answer all of those questions" regarding who makes the decision for discretionary bonuses). Apparently, McColl's counsel did not pursue that line of inquiry.

Therefore, Michael Schroeder has testified that he is an owner of stock in APIS. McColl does not identify what additional information she seeks to compel regarding Michael Schroeder's ownership interest in APIS; she has not specified where Allied has declined to provide that information; and she has not explained why additional information would be relevant to her claims. Accordingly, McColl's motion to "compel Michael Schroeder to answer questions about his ownership interest in APIS" (Doc. 123 at 1) is denied.

### III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's Second Motion to Compel (Doc. 122) is **DENIED**.

DATED this 23rd day of October, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge